IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JON B. TIGGES,

              Plaintiff,

v.                                                      Civil Action No. 3:20-cv-410

RALPH S. NORTHAM, Governor,
Commonwealth of Virginia, et al.,
              Defendants.

## MEMORANDUM ORDER

This matter comes before the Court on the plaintiff's motion for a preliminary injunction. (Dk. No. 7.)  The Court held a hearing on the motion on July 20, 2020.  For the reasons set forth below, the Court will deny the motion.

## I.  FINDINGS OF FACT

Pursuant to Federal Rule of Civil Procedure 65, the Court finds the following facts:

### *Virginia's Response to COVID-19*

1.      In late 2019, a novel coronavirus appeared in Wuhan, Hubei Province, China.  The virus quickly spread from China to other parts of the world.  On February 11, 2020, the World Health Organization ("WHO") named the disease caused by the virus COVID-19.  On March 11, 2020, the WHO declared COVID-19 a pandemic.[1]

2.      COVID-19 spreads when an infected person transmits the virus through respiratory droplets.  An infected person without any symptoms can spread the virus to another person.  The

---

[1]  *Timeline of WHO's Response to COVID-19*, World Health Organization, https://www.who.int/news-room/detail/29-06-2020-covidtimeline (last updated June 30, 2020).

virus, therefore, spreads easily from person-to-person.  Currently, no vaccine exists to protect against infection from COVID-19.[2]

3.      Public health officials recommend the following measures to prevent the spread of COVID-19:  wearing a face covering over the nose and mouth, maintaining a physical distance of six feet between people who do not live in the same household, and avoiding in-person gatherings of people who do not live in the same household.

4.      On March 7, 2020, the Virginia Department of Health reported the first confirmed case of COVID-19 in the Commonwealth of Virginia.[3]

5.      In response to the outbreak of COVID-19, Governor Ralph S. Northam declared a state of emergency in Virginia on March 12, 2020.[4]

6.      Over the course of the following weeks, Governor Northam issued a series of Executive Orders designed to slow the spread of COVID-19 in Virginia.  On March 23, 2020, Governor Northam issued Executive Order No. 53 (the "Phase Zero Order").  Among other restrictions, the Phase Zero Order prohibited all public and private in-person gatherings of ten or more individuals.  The Order further closed "all dining and congregation areas in restaurants, dining establishments, food courts, breweries, microbreweries, distilleries, wineries, tasting rooms,

---

[2] Commonwealth of Virginia, Executive Department, Order of the Governor and State Health Commissioner, Order of Public Health Emergency Two (March 25, 2020).

[3] *First Virginia Case of COVID-19 Confirmed at Fort Belvoir*, Va. Dep't of Health (Mar. 7, 2020), https://www.vdh.virginia.gov/news/2020-news-releases/first-virginia-case-of-covid-19-confirmed-at-fort-belvoir/.

[4] Commonwealth of Virginia, Office of the Governor, Exec. Order No. 51, *Declaration of a State of Emergency Due to Novel Coronavirus (COVID-19)* (Mar. 12, 2020).

and farmers markets." The above establishments, however, could "offer delivery and take-out services." Thus, effective March 24, 2020, the Commonwealth entered into "Phase Zero."[5]

7.      On March 30, 2020, Governor Northam issued Executive Order No. 55 (the "Temporary Stay at Home Order"). Subject to certain exceptions, the Order required "[a]ll individuals in Virginia to remain at their place of residence." Additionally, the Order extended the restrictions set forth in Executive Order No. 53 until June 10, 2020. The Order took effect on March 30, 2020.[6]

8.      On May 8, 2020, Governor Northam and State Health Commissioner M. Norman Oliver issued Executive Order No. 61 and Order of Public Health Emergency Three (the "Phase Two Order"), which eased some of the restrictions set forth in Executive Order Nos. 53 and 55. Subject to certain requirements, the Order allowed dining establishments such as restaurants and wineries to begin dine-in service in outdoor areas. The occupancy of those establishments could not exceed 50 percent "of the lowest occupancy load on the certificate of occupancy." The Order also required dining establishments to position tables six feet apart from other tables and required "employees working in customer-facing areas" to "wear face coverings over their nose and mouth at all times." Businesses that could not adhere to the restrictions were required to close. The Order continued the prohibition of all public and private in-person gatherings of more than ten people. Thus, effective May 15, 2020, most of the Commonwealth entered into "Phase One."[7]

---

[5] Commonwealth of Virginia, Office of the Governor, Exec. Order No. 53, *Temporary Restrictions on Restaurants, Recreational, Entertainment, Gatherings, Non-essential Retail Businesses, and Closure of K-12 Schools Due to Novel Coronavirus (COVID-19)* (Mar. 23, 2020).

[6] Commonwealth of Virginia, Office of the Governor, Exec. Order No. 55, *Temporary Stay at Home Order Due to Novel Coronavirus (COVID-19)* (Mar. 30, 2020).

[7] Commonwealth of Virginia, Office of the Governor, Exec. Order No. 61, *Phase One Easing of Certain Temporary Restrictions Due to Novel Coronavirus (COVID-19)* (May 8, 2020).

9.     Because certain jurisdictions continued to experience higher positivity rates than other localities, Governor Northam allowed local officials to request to remain in "Phase Zero." On May 9, 2020, local officials from the Northern Virginia region, including Loudoun County, made such a request. On May 12, 2020, Governor Northam and Commissioner Oliver issued Executive Order No. 62 and Order of Public Health Emergency Four. That Order explained that the Northern Virginia region "face[d] unique challenges when compared to the rest of the Commonwealth," noting that the region was "substantially higher than the rest of the Commonwealth in percentage of positive tests for COVID-19." Accordingly, the Order delayed the Northern Virginia region from entering into "Phase One" until May 28, 2020. Thus, effective May 15, 2020, the Northern Virginia region remained in "Phase Zero."[8]

10.     The Northern Virginia region entered into "Phase One" on May 29, 2020.

11.     On May 26, 2020, Governor Northam and Commissioner Oliver issued Executive Order No. 63 and Order of Public Health Emergency Five (the "Face Covering Order"). With certain exceptions, the Order requires "[a]ll patrons in the Commonwealth aged ten and over" to cover their mouth and nose with a face covering, as described and recommended by the CDC" when "when entering, exiting, traveling through, and spending time inside" certain establishments. The Order applies to patrons visiting dining establishments, including wineries. Adults who fail to comply with the face covering requirement are subject to criminal prosecution for committing a Class I misdemeanor pursuant to Va. Code § 32.1-27. Additionally, Commissioner Oliver may

---

[8] Commonwealth of Virginia, Office of the Governor, Exec. Order No. 62, *Jurisdictions Temporarily Delayed from Entering Phase One in Executive Order 61 and Permitted to Remain in Phase Zero: Northern Virginia Region* (May 12, 2020).

seek injunctive relief in circuit court to enforce the Order pursuant to Va. Code § 32.1-27. Executive Order No. 63 remains in effect.

12.    On June 2, 2020, Governor Northam and Commissioner Oliver issued Executive Order No. 65 and Order of Public Health Emergency Six (the "Phase Two Order").  Subject to certain requirements, the Order allowed dining establishments such as restaurants and wineries to seat parties of fifty patrons or fewer.  The Order also prohibited all public and private in-person gatherings of more than fifty people.  Thus, effective June 5, 2020, most of the Commonwealth entered into "Phase Two."[9]

13.    On June 2, 2020, Governor Northam and Commissioner Oliver issued Third Amended Executive Order No. 61 and Order of Public Health Emergency Three.  Under that Order, the Northern Virginia region, including Loudoun County, and the City of Richmond remained in "Phase One."

14.    The entire Commonwealth, including the Northern Virginia region, entered into "Phase Two" on June 12, 2020.[10]

15.    The Temporary Stay at Home Order expired on June 4, 2020.

16.    The Phase Zero Order and the Phase One Order expired on June 12, 2020.

17.    The Phase Two Order expired on June 30, 2020.

18.    On June 30, 2020, Governor Northam and Commissioner Oliver issued Executive Order No. 67 and Order of Public Health Emergency Seven (the "Phase Three Order").  Subject to certain requirements, the Order allows dining establishments such as restaurants and wineries

---

[9] Commonwealth of Virginia, Office of the Governor, Exec. Order No. 65, *Phase Two Easing of Certain Temporary Restrictions Due to Novel Coronavirus (COVID-19)* (June 5, 2020).

[10] Commonwealth of Virginia, Office of the Governor, Amended Exec. Order No. 65, *Phase Two Easing of Certain Temporary Restrictions Due to Novel Coronavirus (COVID-19)* (June 9, 2020).

to have indoor and outdoor service. Among other restrictions, the Order requires dining establishments to separate all parties by six feet and requires "[e]mployees working in customer-facing areas" to "wear face coverings over their nose and mouth at all times." Businesses that cannot comply with the requirements must close. The Order prohibits all public and private in-person gatherings of more than 250 individuals. Private bookings for events cannot exceed 250 individuals.

19.     Additionally, the Phase Three Order lists certain requirements for religious services, including that "[i]ndividuals . . . must be at least six feet apart when seated and must practice proper physical distancing at all times." The Order further requires the "mark[ing] [of] seating and common areas where attendees may congregate in six-foot increments to maintain physical distancing between persons who are not Family members." The Order defines "Family members" as "blood relations, adopted, step, and foster relations, as well as all individuals residing in the same household."

20.     The Phase Three Order grants the Virginia Department of Health the authority to enforce the restrictions. Willful failure to comply with the Order amounts to a Class I misdemeanor pursuant to Va. Code § 32.1-27. Commissioner Oliver may seek injunctive relief in circuit court to enforce the Order pursuant to Va. Code § 32.1-27. Finally, the Order grants enforcement authority to the appropriate state agency with regulatory authority over the business. Thus, effective July 1, 2020, the entire Commonwealth entered into "Phase Three." The Phase Three Order remains in effect.

21.     Of the Executive Orders and Orders of Public Health Emergency at issue here, only the Face Covering Order and the Phase Three Order remain in effect.

22.    As of July 20, 2020, the Virginia Department of Health has reported 78,375 cases of COVID-19.  7,201 people have been hospitalized.  2,031 people have died.  The Virginia Department of Health has reported 4,670 cases of COVID-19 in Loudoun County, where 317 people have been hospitalized and 103 people have died.[11]

*The Plaintiff's Business*

23.    The plaintiff, Jon B. Tigges, owns Zion Springs, LLC ("Zion Springs"), "a licensed farm winery in Loudoun County." (Compl. ¶ 9.)  Loudoun County is located within the Northern Virginia region as defined in the Executive Orders and Orders of Public Health Emergency described above.

24.    At Zion Springs, Tigges sells "packages" for weddings and receptions at a fixed price.  (*Id.* ¶ 10.)  A "package" typically "includes meals and beverages, photography, event planning, design, entertainment, on-site lodging for the wedding party, and an outdoor area (and indoor barn) for music and dancing."  (*Id.*)  Zion Springs' largest wedding has consisted of 250 guests.  In 2019, Tigges grossed over $1.3 million in revenue from weddings and other events.

25.    Events at Zion Springs are private and invitation-only.  Most weddings involve a religious component.  Political fundraisers held at Zion Springs often involve "discussions of policy and politics."  (*Id.* ¶ 11.)

26.    Before COVID-19, Zion Springs had sixteen wedding packages scheduled for the spring and summer of 2020.  Zion Springs' clients have canceled all sixteen wedding packages.  Clients continue to cancel previously scheduled wedding packages for the fall of 2020.  Tigges, therefore, has suffered a significant economic loss due to the COVID-19 pandemic.

---

[11]    *COVID-19 Daily Dashboard*, Virginia Department of Health, https://www.vdh.virginia.gov/coronavirus/covid-19-daily-dashboard/ (last updated July 20, 2020).

27.    Zion Springs qualifies as a "dining establishment" or "winery" as defined in the Face Covering Order and the Phase Three Order. Additionally, because Zion Springs hosts weddings with a religious component, Zion Springs holds "religious services" as defined in the Phase Three Order. Zion Springs, therefore, is subject to the restrictions set forth in those Orders.

28.    Accordingly, Tigges may provide indoor and outdoor service at Zion Springs, provided that he complies with the other restrictions set forth in the Phase Three Order. He may host events involving 250 or fewer individuals. Employees working in customer-facing areas must wear a face covering. Additionally, patrons spending time indoors at Zion Springs must wear a face covering as provided in the Face Covering Order.

## II. CONCLUSIONS OF LAW

On June 9, 2020, Tigges filed this case against Governor Northam and Commissioner Oliver. He asserts that the above Executive Orders and Orders of Public Health Emergency have "*de facto* killed [his] business." (Compl. ¶ 69.) He blames the mass cancelation of the wedding packages at Zion Springs and the accompanying economic loss on the restrictions set forth in the above Orders issued by the defendants. His complaint asserts one count:   violation of constitutional and civil rights pursuant to 42 U.S.C. § 1983.[12] He asks the Court to declare the above Orders unconstitutional and to issue a preliminary injunction enjoining the defendants from enforcing the Orders.[13]

---

[12] The complaint appears to allege that the defendants have violated the Virginia Constitution, the Virginia Administrative Process Act ("VAPA"), and various other provisions of the Virginia Code. (*See* Compl. ¶¶ 1-2; 12-17; 80-96; 97-113.) The complaint, however, does not assert a violation of the Virginia Constitution, the VAPA, or any other provision of the Virginia Code as a separate count. Instead, the sole count is a § 1983 claim. (*Id.* ¶¶ 114-122.)

[13] In his motion for a preliminary injunction, Tigges asks the Court to preliminarily enjoin the defendants from enforcing the Phase Two Order and the Face Covering Order. The complaint,

Having found the above facts, the Court sets forth its conclusions of law as follows:

1.      "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 347 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010). A plaintiff seeking a preliminary injunction must satisfy the following four factors: (1) "a clear showing that it will likely succeed on the merits;" (2) "a clear showing that it is likely to be irreparably harmed absent preliminary relief;" (3) the balance of equities tips in the plaintiff's favor; and (4) a preliminary injunction is in the public interest. *Real Truth About Obama*, 575 F.3d at 346-47. "[A]ll four requirements must be satisfied." *Id.* at 346.

### *Likelihood of Success on the Merits*

2.      A movant must make a clear showing that the case will likely succeed on the merits at trial. *Real Truth*, 575 F.3d at 345. This standard requires the plaintiff to show more than "a grave or serious question for litigation." *Id.* at 347.

3.      *First*, the Court concludes that Tigges has failed to make a clear showing that he will likely succeed on the merits of any claim for injunctive relief based on state law. Tigges appears to seek injunctive relief against the defendants—both state officials—based on alleged violations of state law.[14] The Eleventh Amendment prevents the Court from awarding such relief.

---

however, appears to ask the Court to declare unconstitutional all or nearly all of the Executive Orders regarding COVID-19. (*See* Compl. at 25.)

[14] The complaint provides as follows: "This claim is a civil action under 42 U.S.C. § 1983 and Article 8, Section I of the Virginia Constitution seeking damages and injunctive relief against Defendants for committing acts, under color of law, with the intent and for the purpose of depriving Mr. Tigges of rights secured under the Constitution and laws of the United States and the Commonwealth of Virginia." (Compl. ¶ 2.) Although that paragraph mentions damages, the complaint does not seek monetary damages in the prayer for relief.

9

4.     Although "federal court[s] may award an injunction that governs [a state] official's future conduct," the Eleventh Amendment prohibits federal courts from issuing an injunction "against state officials on the basis of state law." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 102, 117 (1984).   Thus, the Court cannot enjoin Governor Northam and Commissioner Oliver from enforcing the Executive Orders and Orders of Public Health Emergency "on the basis of state law." *Id.*

5.     Indeed, in a recent case challenging the Governor's Executive Orders regarding COVID-19, the Court held that the plaintiff had failed to show any likelihood of success on the merits "because the Governor is likely immune from suit in federal court on [the plaintiff's] state statutory claim" under the Virginia Religious Freedom Act. *Lighthouse Fellowship Church v. Northam*, No. 2:20cv204, 2020 WL 2614626, at *6 (E.D. Va. May 21, 2020) (published opinion).

6.     Because "[s]uits against state officers for violations of state laws are absolutely barred by Eleventh Amendment immunity," *id.* at *5, Tigges has failed to make a clear showing that he will likely succeed on the merits as to any claim for injunctive relief against the defendants based on alleged violations of state law.

7.     *Second*, the Court concludes that Tigges has failed to make a clear showing that he will likely succeed on the merits of any claim against Governor Northam.   Tigges seeks injunctive relief against both Northam and Commissioner Oliver based on alleged violations of federal law. The Eleventh Amendment prevents the Court from awarding such relief against Governor Northam.

8.     Under the Eleventh Amendment, states enjoy immunity from lawsuits filed by private parties in federal court. *See Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 760 (2002).   State officials, however, "cease[ ] to represent the state when [they] attempt[ ] to use

10

state power in violation of the Constitution." *Sch. Bd. of City of Charlottesville v. Allen*, 240 F.2d 59, 63 (4th Cir. 1956). Thus, "a suit against individuals, for the purpose of preventing them, as officers of a state, from *enforcing* an unconstitutional enactment, to the injury of the rights of the plaintiff, is not a suit against the state within the meaning of the [Eleventh] Amendment." *Id.* (emphasis added). *Ex parte Young*, 209 U.S. 123 (1908).

9.      In *Wright v. North Carolina*, the Fourth Circuit clarified that a "governor's duty to uphold state law [is] not sufficient to impose the required 'special relation' to enforce the law so as to make him a proper defendant." 787 F.3d 256, 262 (4th Cir. 2015). Accordingly, a state official, such as Governor Northam, "may be subject to suit under *Ex parte Young* only if: (1) there is a special connection between the Governor and the enforcement of challenged policy that goes beyond his general duty under the Virginia Constitution to enforce the laws of the Commonwealth; and (2) the Governor has acted or threatened to enforce the policy." *Lighthouse Fellowship Church*, 2020 WL 2614626, at *4.

10.     In this case, Tigges has failed to show any special connection between Governor Northam and the enforcement of the Executive Orders and Orders of Public Health Emergency at issue here that goes beyond his general duty under the Virginia Constitution to enforce the laws of the Commonwealth. Nor has Tigges shown that Governor Northam has acted or threatened to enforce the policy in any real sense. The Court agrees with the reasoning set forth in *Lighthouse Fellowship Church* and concludes that the Governor enjoys Eleventh Amendment immunity because he does not have the required "enforcement" power with respect to the Orders at issue here. *See id.* at *3-5. Accordingly, Tigges has failed to make a clear showing that he will likely succeed on the merits as to any claim against Governor Northam.

11.    *Third*, the Court concludes that Tigges has failed to make a clear showing that he will likely succeed on the merits as to any challenge based on any expired Executive Order or Order of Public Health Emergency. Tigges asks the Court to preliminarily enjoin the defendants from enforcing the Phase Two Order. That Order expired on June 30, 2020. (*See* Findings of Fact ¶¶ 13, 16.) Indeed, the entire Commonwealth, including the Northern Virginia region, entered Phase Three on July 1, 2020. (*See id.* ¶ 17.) Under Phase Three, Tigges may host up to 250 guests, Zion Springs' largest crowd in the past. Thus, any challenge to an expired Executive Order or Order of Public Health Emergency is moot.

12.    Federal courts only have jurisdiction to hear "cases" and "controversies." U.S. Const., Art. III, § 2. Thus, a case must present "an actual controversy . . . at all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997). "If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013).

13.    An exception to the mootness doctrine exists for claims that are "capable of repetition, yet evading review." *Kingdomeware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1976 (2016). To proceed under that exception, a plaintiff must show that (1) "the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration," and (2) "there [is] a reasonable expectation that the [plaintiff] [will] be subject to the same action again." *Id.*

14.    Here, Tigges cannot invoke the exception to the mootness doctrine because he has failed to show any reasonable expectation that he will be subject to the same action again. Tigges offers little more than speculation that officials might reinstate restrictions in Virginia. Moreover, even if officials were to reinstate restrictions, the Court has no idea what form those restrictions or

any future Executive Order or Order of Public Health Emergency might take. Tigges, therefore, has failed to make a clear showing that he will likely succeed on the merits as to any claim based on any expired Executive Order or Order of Public Health Emergency, including the Phase Two Order. *Cf. Spell v. Edwards*, 962 F.3d 175, 179 (5th Cir. 2020) (holding that a similar challenge to expired executive orders was moot when the "orders expired by their own terms").

15.     In sum, the Court concludes that Tigges has failed to make a clear showing that he will likely succeed on the merits at least with respect to any claim (1) for injunctive relief against the defendants based on alleged violations of state law, (2) against Governor Northam, or (3) based on any expired Executive Order or Order of Public Health Emergency.

16.     *Finally*, the Court concludes that Tigges has failed to make a clear showing that he will likely succeed on the merits as to any claim pursuant to § 1983. Indeed, the vast majority of courts that have confronted challenges to executive action regarding business closures in the midst of the COVID-19 pandemic have declined to award injunctive relief. *See, e.g.*, *SH3 Health Consulting, LLC v. Page*, No. 4:20cv605, 2020 WL 2308444, at *6 (E.D. Mo. May 8, 2020) (published opinion).

17.     Any constitutional challenge to state action taken in response to a public health crisis begins with the Supreme Court's decision in *Jacobsen v. Massachusetts*, 197 U.S. 11 (1905). In *Jacobson*, the Court explained that "a community has the right to protect itself against an epidemic of disease which threatens the safety of its member." *Id.* at 27. Accordingly, "when faced with a society-threatening epidemic, a state may implement emergency measures that curtail constitutional rights so long as the measures have at least some 'real or substantial relation' to the public health crisis and are not 'beyond all question, a plain, palpable invasion of rights secured by the fundamental law.'" *In re Abbott*, 954 F.3d 772, 785 (quoting *Jacobsen*, 197 U.S. at 31).

13

Federal courts, of course, lack the "authority to determine the most effective measures for protecting the public—that 'judgment must be left to the governing state authorities.'" *SH3 Health Consulting*, 2020 WL 2308444, at *6 (quoting *In re Abbott*, 954 F.3d at 784).

18.    The Court concludes that the Orders at issue have a "real or substantial relation" to the COVID-19 pandemic. *In re Abbott*, 954 F.3d at 785.  Restrictions on non-essential businesses, limitations on public and private gatherings, and requirements to wear face coverings all relate directly to the Commonwealth's efforts to slow the rate of infection of COVID-19.[15]

19.    The Court further concludes that the Orders are not "beyond all question, a plain, palpable invasion of rights secured by the fundamental law." *Id.*  Tigges appears to argue that the Orders violate his rights to free exercise of religion, freedom of assembly, and equal protection.[16]

20.    *Free Exercise*.  "In addressing the constitutional protection for free exercise of religion, [the Supreme Court's] cases establish the general proposition that a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." *Church of the Lukumi*

---

[15] *See Coronavirus Disease 2019 (COVID-19): How to Protect Yourself & Others*, Cts. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html (last updated Apr. 24, 2020) (advising that "[t]he best way to prevent illness is to avoid being exposed to the virus," suggesting "6 feet of distance between yourself and people who don't live in your household," and recommending that "[e]veryone . . . wear a cloth face cover in public settings and when around people who don't live in your household, especially when other social distancing measures are difficult to maintain").

[16] In his brief in support of his motion for preliminary injunction, Tigges does not argue that the Orders constitute an unconstitutional taking under the Fifth Amendment or a due process violation under the Fourteenth Amendment.  To the extent that Tigges continues to assert a takings or due process claim, the Court concludes that he has failed to show that he will likely succeed on the merits as to either claim. *See McCarthy v. Cuomo*, No. 20cv2124, 2020 WL 3286530, at *4-5 (E.D.N.Y. June 18, 2020) (rejecting a takings claim in a challenge to COVID-19 orders); *SH3 Health Consulting*, 2020 WL 2308444, at *9-10 (rejecting a due process claim in a challenge to COVID-19 orders).

14

*Babalu Aye v. City of Hialeah*, 508 U.S. 520, 531 (1993). "A law lacks facial neutrality if it refers to a religious practice without a secular meaning discernable from the language or context." *Id.* at 533.

21.     The Phase Three Order, which remains in effect, is facially neutral. *See Lighthouse Fellowship Church v. Northam*, No. 2:20cv204, slip op. at 16 (E.D. Va. May 1, 2020) (holding that Governor Northam's earlier Executive Orders are facially neutral). The Order prohibits *all* public and private in-person gatherings of more than 250 individuals. (Findings of Fact ¶ 17.) The Order lists certain requirements for religious services, including that "[i]ndividuals . . . must be at least six feet apart when seated and must practice proper physical distancing at all times." Family members may be seated together. Religious services, however, are otherwise subject to the same restrictions on public and private in-person gatherings set forth in the Order. *Cf. Antietam Battlefield KOA v. Hogan*, No. CCB-20-1130, 2020 WL 2556496, at *8 (D. Md. May 20, 2020) (published opinion).

22.     "Under the Supreme Court's free exercise doctrine, a neutral government decision of general applicability is subject to rational basis review, even where it has the incidental effect of burdening religious exercise." *Jesus Christ Is the Answer Ministries, Inc. v. Baltimore Cty.*, 915 F.3d 256, 265 (4th Cir. 2019). In this case, "it is clear that the prohibition on large gatherings is rationally related to the legitimate government interest of reducing the spread of COVID-19, because the prohibition limits contact between individuals, which is how the virus spreads." *Antietam Battlefield KOA*, 2020 WL 2556496, at *10. Tigges, therefore, has failed to show a clear likelihood of success on the merits as to any free exercise claim.

23.     *Freedom of Assembly.* "The right of peaceable assembly is a right cognate to those of free speech and free press and is equally fundamental." *Richmond Newspapers, Inc. v. Virginia*,

448 U.S. 555, 578 (1980).  While courts apply strict scrutiny to content-based regulations, courts apply intermediate scrutiny to content-neutral restrictions.  *Ross v. Early*, 746 F.3d 546, 552 (4th Cir. 2014).  The content-neutral restriction must be "narrowly tailored to serve a significant governmental interest, and . . . leave open ample alternative channels for communication of the information."  *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

24.     In this case, the Phase Three Order qualifies as a content-neutral regulation.  The Order restricts "the time and manner in which speech can be expressed" because it "prohibits all gatherings of more than [250] people, no matter the purpose for the gathering or the type of speech the gathering wishes to express." *Antietam Battlefield KOA*, 2020 WL 2556496, at *10.  The Order imposes the restrictions "for the duration of the public health emergency."  *Id.*  Accordingly, the Order is subject to intermediate scrutiny.

25.     The Phase Three Order easily survives intermediate scrutiny.   The Order is designed to control the spread of COVID-19, which is a significant governmental interest.  The timeline of Virginia's response to COVID-19 and the Governor's phased approach to lifting restrictions "indicates narrow tailoring."  *Id.* at *11.  Indeed, in "Phase One," in-person gatherings of ten or more individuals were prohibited.  That number increased to fifty in "Phase Two."  Now in "Phase Three," Virginians may gather in groups of up to 250 people.  Governor Northam and Commissioner Oliver, therefore, have "gradual[ly] tailor[ed] . . . the prohibition based on the COVID-19 figures and how well the previous prohibitions were working."  *Id.*  The Order leaves open all forms of communication other than in-person contact and allows for communication through in-person groups of 250 people or fewer.  Tigges, therefore, has failed to make a clear showing that he will likely succeed on the merits as to any freedom of assembly claim.

26.     *Equal Protection.*   Tigges argues that the defendants have "violat[ed] equal treatment of the laws by discriminating in categories and location with respect to civil rights and whether criminal sanctions apply."   (Dk. No. 8, at 1.)   The Equal Protection Clause of the Fourteenth Amendment prohibits a state from "deny[ing] to any person within its jurisdiction the equal protection of the laws."   U.S. Const. amend. XIV, § 1.   "The purpose of the [E]qual [P]rotection [C]lause . . . is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination."  *King v. Rubenstein*, 825 F.3d 206, 220 (4th Cir. 2016) (alterations in original) (internal quotation marks omitted).   "To succeed on an equal protection claim, a plaintiff must first demonstrate [1] that he has been treated differently from others with whom he is similarly situated and [2] that the unequal treatment was the result of intentional or purposeful discrimination."  *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001).

27.     Tigges appears to argue that he has suffered an equal protection violation because expired Orders have allowed the Northern Virginia region to delay the reopening process.   That argument easily fails because the Northern Virginia region has entered into Phase Three along with the rest of the Commonwealth and, in any event, the Northern Virginia region does not constitute a protected class for equal protection purposes.  *See Wilkins v. Gaddy*, 74 F.3d 344, 347 (4th Cir. 2013) ("[U]nless a statute affects a fundamental right or some protected class, courts generally accord [the governmental action] a 'strong presumption of validity' by applying a rational basis standard of review.").

28.     At the hearing on the motion for preliminary injunction, Tigges' counsel argued that Tigges has suffered an equal protection violation because the Phase Three Order treats participants in religious services, including weddings, differently from patrons at restaurants.   Even assuming that a wedding participant qualifies as a protected class for equal protection purposes,

Tigges does not have standing to assert such a claim. *See Myers v. Loudoun Cty. Pub. Schs.*, 418 F.3d 395, 400 (4th Cir. 2005) ("The right to litigate for *oneself* . . . does not create a coordinate right to litigate for *others*."). Whether Zion Springs' customers suffer any injury is not before the Court. Tigges, therefore, has failed to show that he will likely succeed on the merits as to any equal protection claim.

*Balance of Equities and Public Interest*

29. In any event, Tigges has failed to show that the balance of equities tips in his favor or that an injunction would be in the public interest. *See Nken v. Holder*, 556 U.S. 418, 435 (2009) (noting that the third and fourth "factors merge when the Government is the opposing party").

30. The Court recognizes that Tigges has suffered significant economic hardship due to the COVID-19 pandemic. Yet Tigges' economic loss does not "outweigh the severe harm [the] defendants would suffer if they could not enforce" the Executive Orders and Orders of Public Health Emergency at issue here. *Tolle v. Northam*, No. 1:20cv363, 2020 WL 1955281, at *1 (E.D. Va. Apr. 8, 2020). Indeed, "it is no exaggeration to recognize that the stakes for residents of the Commonwealth are life-or-death." *Id.* Given that no known vaccine or treatment options are available to protect the public against infection from COVID-19, the Commonwealth and its elected officials have an urgent need to act to protect the health and safety of all Virginians. Accordingly, the balance of equities tips heavily in the defendants' favor.

31. Similarly, the Court has little difficulty concluding that an injunction would not serve the public interest. *See id.* (concluding that granting injunctive relief "would also disserve the public interest, because enabling large groups to gather . . . without practicing social distancing . . . could facilitate the spread of the virus and endanger the lives of many Virginians"). The Court cannot understate the public interest at stake here. The public interest in protecting human life—

particularly in the face of a global and unpredictable pandemic—would not be served by enjoining state officials from taking executive action designed to slow the spread of COVID-19. *Cf. Lighthouse Fellowship Church*, slip op. at 32 (concluding that the public interest "in saving human life" outweighed any interest in attending church together). Tigges, therefore, has failed to show that an injunction would serve the public interest.

## III. CONCLUSION

For the reasons set forth above, the Court DENIES the motion for a preliminary injunction. (Dk. No. 7.)

It is so ORDERED.

Let the Clerk send a copy of this Order to all counsel of record.

Date: <u>21 July 2020</u>
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge